SENECA PETTEE, JR., *vs.* HENRY K. APPLETON & another.

A contract that one party shall furnish money and the other perform work for a given business, and that its net profits shall be equally divided between them, makes, without reference to their intent, a partnership as to third persons.

CONTRACT against George P. Little and Henry K. Appleton, as the makers of seven promissory notes, signed " Little & Co.," payable to the order of " ourselves," and indorsed " Little & Co." George P. Little was defaulted. Appleton defended, denying, among other things, that the signature, " Little & Co.," was his signature, and denying that he was a partner of the other de fendant.

At the trial in the Superior Court, before *Devens*, J., the fol· lowing agreement, signed by the defendants, the execution of which was admitted, was put in evidence by the plaintiff :

" This memorandum of agreement, made this 23d day of November, A. D. 1868, at Boston, and Commonwealth of Massachusetts, by and between George P. Little and Henry K. Appleton, both of said Boston, witnesseth that George P. Little is the proprietor and publisher of the Commercial Catalogue, and being about to begin the canvass for the third number thereof, he agrees to and with said H. K. Appleton, in consideration that he pay to the business aforesaid the sum of $400, as the said Little may from time to time require and demand, to deliver to ·him, the said H. K. Appleton, the orders which he, said Little, may receive in the prosecution of said canvass. And the said Appleton agrees to furnish said amount of money, as said Little may require it, and upon the further consideration and agreement that he shall share with said Little one half of the net profits of said business. And said Little covenants and agrees to and with said H. K. Appleton to give him said orders, as they may be received, and to share with said          equally, after deducting all expenses thereof."

It was admitted that the third number of the Commercial Catalogue was published, and the business relating to it was transacted, under the name of Little & Co.

Cyrus Cummings, a witness for the plaintiff, testified that he had desk-room in the office with Little and the plaintiff ; that in the year 1869 Appleton came into the office frequently ; that the name of Little & Co. was on the door, and the Commercial Catalogue, an advertising pamphlet, was published by Little at that office. He further testified, on cross-examination, that the Catalogue, was published in 1868, and that Appleton sometimes came there then ; that his calls in 1869 were from one to three times a week on some weeks, and that he stayed from five to ten minutes ; that the same name, " Little & Co.," was on the door in 1868, and that no change was made in the name in either year ; and that the plaintiff was connected with Little in the year 1868.

The plaintiff testified that he was connected with Little in 1868 ; that he was not a partner ; that he knew that Appleton was furnishing Little with money, and that he frequently saw Appleton in the office in 1869.

Appleton testified that he was a tailor, and had been engaged in that business for forty-two years, and had never been engaged in any other ; that he furnished the $400 mentioned in the agreement, to get pay for a former $300 that Little owed him ; that he took the orders there mentioned, to secure to himself the $400 and the old debt ; that he called frequently on Little in 1868 and 1869, to collect the money due him, " but not on any business of the Catalogue ; " that he had nothing to do with it, but to receive the orders which were taken under the contract.

Defendants' counsel contended and requested the court to rule that the case should be submitted to the jury on all the evidence , that the agreement did not by itself constitute a copartnership, but that the intent to form a copartnership was a question for the jury on all the facts in the case, taken in connection with the written agreement ; but the court declined so to rule, and ruled that the written agreement constituted a copartnership in the business therein mentioned as to third parties.

The other questions raised by the answer were submitted to the jury under instructions which are not excepted to. The jury found for the plaintiff and the defendant Appleton alleged exceptions

*A. A. Ranney & D. F. Crane,* for the defendant Appleton.

*W. F. Slocum & W. S. Slocum,* for the plaintiff.

AMES, J. By the terms of the written contract, the defendant Appleton was to furnish the sum of $400 to the business of making the proposed publication; and the other defendant, Little, was to begin the canvass for it without delay. All the orders, which Little should obtain, were to be delivered, as they should be received, to Appleton, and the profits of the business, "after deducting all expenses thereof," were to be equally divided between them. That is to say, it was to be a joint enterprise; the orders were to be placed in the hands of Appleton, thereby giving him the control or possession of the proceeds of the business, and the net profits were to be equally divided between them. It is impossible under the rules of law to avoid the conclusion that this contract constituted a copartnership between the parties, as to third parties, as to the business mentioned therein. This result is according to the decision in several recent cases in this court. *Julio* v. *Ingalls,* 1 Allen, 41. *Pratt* v. *Langdon,* 12 Allen, 544; 97 Mass. 97. *Brigham* v. *Clark,* 100 Mass. 430. *Getchell* v. *Foster,* 106 Mass. 42. *Exceptions overruled.*