FREDERICK ESTABROOK & others *vs.* GEORGE A. WOODS
& another.

Suffolk.    December 15, 1905. — September 4, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Partnership.  Agency.  Contract*, Construction.

One agreed in writing to lend to another $200 for three years with interest at the
rate of six per cent per annum upon the security of a chattel mortgage on the
stock of goods and fixtures of a cigar store in a certain place of which the lender
was to procure a lease for the borrower.   The lender also agreed to secure for
the borrower a stock of cigars and tobacco to an amount of not more than $250,
and was to be allowed interest at the rate of six per cent per annum on pay-
ments for this purpose until repaid by the borrower, the payments to be secured
by the chattel mortgage.   The borrower was to devote his time and atten-
tion to carrying on the cigar store in question, and from the proceeds of the
business was to pay, first, the expenses of the business, second, the interest
due to the lender, third, to take for his own use any balance not exceeding $20
per week, fourth, to pay one half of the remaining balance or net profit to the
lender, keeping the other half for his own use, and also, when he had repaid all
sums advanced by the lender, thereafter until the expiration of three years
from the date of the lease of the cigar store, he was to pay to the lender one
quarter of the net profits instead of one half.   Goods and fixtures were obtained
to fit up a cigar store in accordance with this contract and were mortgaged by
the borrower to the lender to secure about $530 advanced by him under the con-
tract.   The lender never held himself out to any one as a partner of the borrower.
An action of contract was brought against the lender and borrower as copart-
ners for a balance of about $370 alleged to be due to the plaintiff for cigars and
tobacco sold and delivered to the borrower for the business carried on under
the contract.   *Held*, that the lender was not liable as a partner, not being enti-
tled under the contract to share in the profits as such, but only entitled to sums
of money, to be determined by the amount of the profits, as a compensation
for what he did and the risk that he ran in furnishing the money at six per cent
interest.   *Held, also*, that for the same reason the lender was not liable as an
undisclosed principal for whom the borrower was acting as an agent.

CONTRACT on an account annexed for a balance of $369.68
alleged to be due for cigars and tobacco sold and delivered to
the defendants, George A. Woods and Alpheus Bigelow, who
were alleged to be copartners doing business at 4 Pemberton
Square in Boston, with interest from February 7, 1902.   Writ in
the Municipal Court of the City of Boston dated July 18, 1902.

On appeal to the Superior Court the case was tried before
*Schofield*, J.   The defendant Bigelow was defaulted, and the

defendant Woods alone defended the case on the ground that he was not a partner. It appeared that on March 9, 1901, Woods and Bigelow executed an agreement in writing, all the material parts of which are quoted in full in the opinion, where also all other material facts are stated.

At the close of the evidence the defendant Woods asked the judge to rule :

1. That upon all the evidence the plaintiffs are not entitled to recover as against the defendant Woods.

2. That the defendant Woods did not, by the agreement made March 9, 1901, become a partner of the defendant Bigelow.

The judge declined to rule as requested, and stated that upon all the evidence there was no question of fact in dispute between the parties, and ruled that upon all the evidence the defendant Woods was liable as a partner, or, if not as partner, as an undisclosed principal, and directed a verdict for the plaintiffs, which was returned by the jury in the sum of $414.04. The defendant Woods excepted, and the judge reported the case for determination by this court. If the ruling and direction could be sustained on the ground that Woods was a partner, judgment was to be entered on the verdict. If Woods could be held only as an undisclosed principal, the verdict was to be set aside and the case was to stand for trial, as the defendant contended that he was taken by surprise by the ruling of the judge upon this point, and stated that he had additional evidence to offer upon it. If the case should be ordered to stand for trial, the plaintiffs might apply to amend their declaration if so advised. If the defendant Woods could not be held either as a partner or as an undisclosed principal, the verdict was to be set aside and judgment was to be entered for the defendant Woods.

*G. C. Coit,* for the defendant Woods.

*C. C. Bucknam,* for the plaintiffs.

KNOWLTON, C. J. The principal question in this case is whether the defendant Woods is liable as a partner with the defendant Bigelow for goods sold by the plaintiffs, for the price of which this action is brought. Woods was the party of the first part and Bigelow the party of the second part in a contract in writing, the substantive portions of which are as follows :

" 1. The party of the first part agrees to loan the party of the second part two hundred dollars for three years, with interest payable semi-annually at the rate of six per cent per annum, said loan to be secured by a chattel mortgage of the stock of goods and fixtures in a cigar store to be located in the building at the southerly corner of Pemberton Square and Tremont Street in Boston in the County of Suffolk and said Commonwealth.

" 2. The party of the first part agrees to secure for the party of the second part a stock of cigars and tobacco to the amount of not more than two hundred and fifty dollars (and said stock of goods may at the option of party of the first part be obtained for said store by said party of the first part by credit or by cash payments) ; and upon payments by the party of the first part for such goods he shall be allowed by said party of the second part interest at the rate of six per cent per annum on such payments until the same are repaid by the party of the second part, and the same shall be secured by the mortgage above mentioned.

" 3. This agreement is conditioned upon the party of the first part being able to secure for the party of the second part a lease for three years of a store to be constructed at the corner of the said premises at a yearly rental of four hundred and eighty dollars and shall guarantee said lease.

" 4. The party of the second part agrees to conduct a cigar and tobacco store in said premises and to devote his time and attention to the conduct of the business and he agrees hereby that he will not engage in any other business, or occupation until after six o'clock P. M. during the term of said lease or so long as the party of the first part shall be liable thereon.

" 5. He shall from the proceeds of the business first pay the expenses incurred in the conduct of the business, and maintain the stock of goods ; second, pay interest due party of the first part ; third, take on account of his services for his own use, any balance not exceeding the sum of twenty dollars per week ; fourth, pay one half of the remaining balance, i. e. the net profit, to party of the first part, and keep the remaining one half for his own use. . . .

" 6. It is agreed that after July 1st, 1902, whenever the party of the second part shall have repaid all sums advanced by the

party of the first part, that thereupon and thereafter in lieu of said one half of the net proceeds as hereinbefore provided the party of the second part shall pay the party of the first part one quarter of the net profits until the expiration of three years from the date of the lease of said premises."

Property was obtained to fit up a cigar store in accordance with this contract, and it was mortgaged by Bigelow to Woods to secure the payment of a note of $533.53, the consideration of which was the liability of Bigelow to Woods under the contract.

There was no evidence that the defendant Woods ever held himself out to the plaintiffs or any one else as a partner of Bigelow, and the question is whether this contract made him a partner in the business carried on under it. That depends upon the actual relation of Woods to the business. If two persons connected in business have such rights and interests as to make them in fact partners, no contract modifying or limiting the liability of either partner, or increasing the liability of the other as between themselves, would have any effect upon the rights of third persons to hold both upon proper contracts made by either in the partnership business. Apart from the liability which one may create by holding himself out as a partner when he is not one, this is the true meaning of those cases which seem to recognize a difference between being partners *inter sese* and being partners as to third persons. In fact, the conditions referred to constitute the persons actual partners, although they may have contracted with one another to modify, as between themselves, some of the usual liabilities of partners.

When there is an arrangement between two persons that one of them shall receive a part of the profits of a business conducted by the other, the usual test to determine whether he is a partner, liable for debts, is to ascertain whether he has a share or interest in the profits as profits, or whether his interest in the profits is merely as a measure of his compensation for something that he does or furnishes under a contract. By the application of this test most if not all of the following cases can be reconciled. *Denny* v. *Cabot*, 6 Met. 82. *Pratt* v. *Langdon*, 12 Allen, 544. *Holmes* v. *Old Colony Railroad*, 5 Gray, 58. *Bradley* v. *White*, 10 Met. 303. *Pettee* v. *Appleton*, 114 Mass. 114. *Dame* v.

*Kempster*, 146 Mass. 454. *Meehan* v. *Valentine*, 145 U. S. 611. *Cox* v. *Hickman*, 8 H. L. Cas. 312. For one to share in the profits as profits, within the true meaning of the cases, is to stand in such relations to the business that the profits, or a share of them, are in his ownership as they accrue. He must have a proprietary interest in each dollar of profits as it is earned, so that he then has a right of possession or control of it for the purpose of retaining his share. This involves an ownership of an interest in the business that produces the profits. Through this comes the implied agency on which the liability of a partner for the contracts of his copartners is founded.

The fair interpretation of the contract in the present case is that Woods was to furnish Bigelow capital to establish and carry on the business for himself, and as this would be a pretty risky investment, he was to receive from Bigelow as compensation, not only interest on the amount invested, at six per cent per annum, but also, for a certain period, he was to have one half of the net profits, reckoning Bigelow's time at twenty dollars per week, and for a certain longer time he was to have one quarter of the net profits. From beginning to end, Bigelow was to be the sole debtor for everything procured for the business, or used in it. Woods was to have security by mortgage from Bigelow for his entire investment and liability. The only interest that he had in the success of Bigelow's enterprise was to get back the money that he furnished, and to get for the chance that he took something more than six per cent interest on his loan, namely, a sum of money to be determined by the amount of the net profits for the term of three years. If Bigelow failed to pay him according to the agreement, his only remedy was under his mortgage, or to sue for the amount, as anybody else would sue for a liability under a contract. He had no right to take control of the business or of the profits earned in it, or to interfere in the management of it in any way. Under the cases cited above, he was not a partner, and was not liable for debts contracted by Bigelow in conducting the business.

The same considerations show that he was not an undisclosed principal for whom Bigelow was acting as an agent.

*Judgment for the defendant Woods.*